**CONTINENTAL CAN CO., Inc., v. CAMERON CAN MACHINERY CO.**

**No. 5270.**

Circuit Court of Appeals, Seventh Circuit.

March 27, 1935.

Frank Parker Davis, of Chicago, Ill., and Eugene G. Mason, of Washington, D. C., for appellant.

Ira J. Wilson, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge.

This was an action for infringement of claims 2, 8, 9, 12, 15, 16, and 17[1] of United

---

[1] "2. In a can body machine of the character described, the combination with means for feeding body blanks into the machine and other mechanisms adapted for operation on the blanks to form them into cylindrical bodies, of a plurality of driven rollers and means for causing said blanks to be delivered between said rollers prior to their delivery to the forming mechanisms and whereby said blanks will be curved in the same direction as ultimately formed and will then be held flat for passage through the forming mechanisms."

"8. The process of forming cylindrical can bodies consisting in curving the blank from which the body is to be formed progressively from one side edge thereof to the other for breaking the grain of the metal, subsequently bending said blank about a horn into cylindrical form, and joining the side edges."

"9. Process of forming a cylindrical can body consisting in curving the blank from which the body is to be formed progressively from one side edge thereof to the other for breaking the grain of the metal, subsequently flattening the blank, notching and forming hooks thereon and then bending said blank about a horn into cylindrical form and joining the side edges."

"12. A can body machine comprising means for curving the blank from which the body is to be formed progressively from one side edge thereof to the other for breaking the grain of the metal, means for subsequently bending said blank about a horn into cylindrical form, and means for joining the side edges."

"15. A can body machine comprising cooperating rolls and a blank guiding means for curving the blank from which the body is to be formed progressively from one side edge thereof to the other for the breaking of the grain of the metal, means associated therewith for holding the blank flat, means for forming hooks on the blank, means for bending the blank about a horn for forming a cylindrical body and joining the side edges."

"16. A can body machine including in combination means for manipulating the blank for breaking the grain of the metal throughout the entire extent of the blank,

States Patent No. 1,772,820, issued to Troyer August 12, 1930, on an application filed February 23, 1926, and subsequently assigned to appellant. The court decreed each claim invalid for lack of invention, and dismissed the bill for want of equity. From that ruling this appeal is prosecuted.

The invention is one of combination and relates to a means and process for the fabrication of metal cans. As explanatory of its object, appellant stated that in the manufacture of metal cans it was the usual practice to form the body blanks cylindrically, after they had been properly flanged and notched, by means of a pair of wing clamps which were actuated against opposite ends of the blanks to bend them about a cylindrical horn and to hold them while the ends were seamed together. As a rule, the blanks did not bend with the same degree of curvature throughout their length, but bent more abruptly at some places than at others, depending on the stiffness of the metal used, thus producing flat or irregular surfaces on the finished cans. Appellant claimed to have discovered that if the metal blank which is to be formed into the can is properly treated so as to break the grain of the metal before bending it about the cylindrical horn, the blanks will then form about the horn in true cylindrical shape. Hence, the object of the patent was said to be to provide both a process and means (1) for breaking the grain of the metal blank by a progressive curving of it from one side edge to the other, (2) for then returning the blank to a substantially flat condition for the shaping and bending of the edge portions so that they might be interlocked, and (3) for then carrying the blank to the cylindrical horn where it was bent into a uniform cylindrical body, and the interlocking edges were locked and the seam was compressed or flattened by a bumping operation.

The elements participating in this combination were all old in the art. Body making machines which included the mechanisms for notching the edges of the blanks, forming hooks thereon, bending the blanks into cylindrical form about the horn, compressing the interlocked edges to form the seam, and feeding the blanks in flat condition past the various operating mechanisms were all disclosed in Troyer's prior patent, No. 1,543,460, issued June 23, 1925.

Likewise, mechanisms for breaking the grain of metal blanks by curving the blanks progressively from one edge to the other were old in the can making art. Leavitt, No. 382,537; Schaake, No. 563,069; Warme, No. 1,094,179; and Peters, No. 1,625,091. Also mechanisms for breaking the grain by flexing or bending the metal blanks back and forth in opposite directions beyond its elastic limit were old in the art. Marshall, No. 175,365; Harvey, No. 202,027; and Kelley, No. 1,649,704. Mechanisms for breaking the grain of metal blanks by bending them back and forth in opposite directions, in combination with automatic machines for operating upon grain broken metal, other than metal blanks for cans, was likewise old in the art. Shuster, No. 973,571; Osswald, No. 1,107,831; and Locke, No. 1,564,696.

If there be novelty in the patent in suit, it must be by virtue of combining one of the well-known devices for breaking the grain of metals with Troyer's prior patent, or its equivalent, and before the patent can be sustained, the combination must have produced a new result or an old result in a more facile or efficient or economical manner.

The three major mechanisms which Troyer combined in creating the body maker of the patent in suit are: (1) The flexing mechanism which breaks the grain; (2) the edge preparing mechanism which forms the hooks; and (3) the body forming mechanism which forms the body in true cylindrical shape and interlocks and compresses the hooks. The flexing mechanism consists of three horizontal parallel cylinders, a guide block, and a straightening plate, although the latter element is not mentioned

means for forming interlocking parts on the edges of the blanks, means for bending said blank into body form and joining the edges thereof, and means for feeding said blank in succession to said blank manipulating means, said edge forming means and said bending means."

"17. A can body machine including in combination means for manipulating the blank for breaking the grain of the metal throughout the entire extent of the blank, means for notching the blank, means for forming interlocking hooks on the edges of the blanks, means for bending the blank about a horn into body shape and interlocking and bumping the edges thereof, and means for feeding said blank in succession to the blank manipulating means, the notching means, the hook forming means, and the means for bending the blank into body shape, interlocking the edges and bumping the same."

as a part of the grain breaking mechanism in claims 2, 8, 9, 12, and 15. The cylinders are positioned vertically one above another, and we shall refer to them as the bottom, center, and top cylinders. The metal plate is fed from the left between the bottom and center cylinders; it thereupon engages the guiding block on the right of the cylinders which returns the blank between the center and top cylinder; then it engages what the specifications refer to as the straightening plate which is located to the left and at the top of the center cylinder. This plate merely prevents the blank from further following the center cylinder and directs the plate further to the left in a horizontal plane between the upper and lower guides, which by force hold the blank flat during the next process of slitting the edges and making the hooks. It is perhaps true that the "straightening plate" has a tendency to further break the grain by reversing the pressure, but not to any appreciable extent, and certainly not in such manner as to render the plate naturally flat. The effect is fully set forth in the file wrapper: "Straightening out the metal in applicant's process is only incidental. If it were practical to flange and notch the ends of the blanks as is required while in curved or cylindrical form, the straightening out process would be eliminated." And again: " * * * the metal is not only flexed to break the stiffness thereof, but it is broken in this curved form and proceeds through other stages, held flat by mechanism that permits the blank when released to spring into arcuate form around the horn for joining the ends together in body form." These statements are further supported by the testimony of appellant's witness, Fink.

After the edges are slit and the hooks are formed, the metal blank is mechanically carried to the cylindrical forming horn, the lengthwise center of the blank being positioned on the vertical center of the horn. In this position, it is said in the specifications, the blank is bent about the horn in true cylindrical form by the co-action of descending wing clamps pivotally connected immediately above the forming horn. The hooks being interlocked by the same action, the seam is then bumped and the operation is completed so far as the formation of the body of the can is concerned. The illustration accompanying the application for the patent, as well as the specifications, seem to indicate that the wing clamps, which are arcuate in form, bend the metal blank about the horn from a horizontal plane into a true cylinder. Figure 5 of the specifications shows the metal plate in a perfectly flat position as it is about to become engaged with the wing clamps, but we assume that the guide plates which held it in that position had not yet been removed, for the testimony introduced by appellant discloses that when the guide plates are removed the metal blank will spring into arcuate form about the horn. To what extent this will occur we are unable to state, but from the evidence to which we have referred, it must be considerable. It is certain, however, that the wing clamps do not bend the metal blank from a horizontal plane. It must be admitted, however, that the wing clamps exert some pressure in bending the metal blank about the horn to its completed condition, but in this respect appellee contends that the patent was anticipated by the prior art, and the trial court sustained the contention.

For the purpose of this discussion we shall consider patent No. 1,625,091, issued April 19, 1927, to Peters on an application filed November 10, 1922. It was this patent in which the court found full response to both the language and substance of claims 2, 8, 12, 16, and 17 of the patent in suit. Here the flat blanks are first notched or edged and then mechanically advanced to a position alongside the bending station, where they are fed to the bending rolls which wrap the blank about the horn by progressive bending. The horn which is a horizontal cylinder is constructed in three sections, the first being located at the bending rolls, the second at the hook forming station, and the third at the side seaming station. The bending rolls consist of two horizontal cylinders of much smaller diameter than the horn. The upper roll is almost entirely recessed into the bottom portion of the horn's circumference. The lower roll is positioned immediately below the upper roll. The metal blank is fed from the right side through these rolls, where it strikes a bending guide which deflects the blank upwardly around the horn until its forward edge engages a stop about one and a half inches from where it first entered the rollers, thus breaking the grain of the metal blank by progressively bending it substantially, but not entirely, to its desired curvature. Wing guides circular in form are provided to direct the blank around the horn. They are mounted upon a shaft immediately above the horn and are held in

circular position by a spiral spring which is stretched from one wing to the other; the left wing may move outwardly against the force of the spring, but the other is held against outward movement. The curved blank is then mechanically advanced to the middle section of the horn, where the hooks are formed; from thence it is advanced to the third section of the horn, where the hooks are interlocked. This is accomplished by two lateral wings of arcuate form, one moving inwardly from each side and engaging the curved metal blank and pushing or bending the sides in and down around the horn until the hooks are interlocked, thus forming a true cylindrical can body. This section of the horn is expandible, thus drawing the hooks into tight engagement while the seam is bumped preparatory to soldering.

In the patent in suit the descending arcuated wing clamps press or bend the already curved plate around the horn into its final cylindrical condition. In Peters the same thing is accomplished by lateral arcuated wings moving inwardly toward the horn. It may be that the curve of the plate after the grain is broken is greater in Peters than in Troyer, but from the record we think the difference is not so great as to warrant the conclusion that a difference in principle is involved. It may be true, as urged by appellant, that Peter's wing clamps would not work on Troyer's mechanism. There is nothing in the record, however, to satisfy us that this conclusion is sound, and there is much to convince us of the contrary, but even so, we think the principle involved is the same in each. The grain is broken by each mechanism in precisely the same manner, and the subsequent results are identical. It is true, there is more or less reverse pressure applied to Troyer's curved blank, caused by the "straightening plate" which directs the blank between the upper and lower guides where it is held flat during the edging process, but as previously quoted from the file wrapper, this was not considered important in the grain breaking process. It was made necessary merely because Troyer desired to notch the blanks and form the hooks at that particular time.

We are convinced that the language and substance of the claims in suit are found in Peters, and for that reason they are invalid. It is true that claims 2, 9, and 15 include means for holding the blank flat, during the edging and hook forming processes. That was not a discovery, but a necessity, due to the particular time at which Troyer desired to employ those processes. The flattening process referred to in these claims we think must be construed to mean merely holding the blank flat against its tendency to resume its curved condition.

Claims 8 and 9 are also invalid because they define merely the function or result of the machine. Claim 8, if valid, would preclude every one except appellant from producing round cans by breaking the grain of metal blanks from which they are formed. A patent is not good for an effect or the result of a certain process, as that would prohibit all other persons from making the same thing by any means whatsoever. Le Roy v. Tatham, 14 How. 156, 14 L. Ed. 367; Knapp v. Morss, 150 U. S. 221, 14 S. Ct. 81, 37 L. Ed. 1059; Miller v. Eagle Manufacturing Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121; Risdon Iron & Locomotive Works v. Medart, 158 U. S. 68, 15 S. Ct. 745, 39 L. Ed. 899; Busch v. Jones, 184 U. S. 598, 22 S. Ct. 511, 46 L. Ed. 707.

We are not unmindful of the fact that this patent carries with it the presumption of validity, but the record discloses that Peters was not cited by the commissioner in the consideration of Troyer's application. A patent was also issued on the alleged infringing device to Cameron (No. 1,935,391) on November 14, 1933, on an application filed October 9, 1929. There is no doubt that it follows very closely the disclosures of the patent in suit, except the order of the processes, and with the further exception that Cameron breaks the grain by means of staggered rolls which leave the blank naturally flat.

The decree of the District Court is affirmed.