McEWAN BROS. CO. v. McEWAN et al.

(Circuit Court. D. New Jersey. February 13, 1899.)

1. PATENTS—VALIDITY—INVENTION.
   Letters patent of the United States No. 492,927, granted March 7, 1893, to Robert B. McEwan, Jessie L. McEwan and Richard W. McEwan, for an improvement in paper-board, cover a patentable product and are valid.

2. SAME.
   The essence of the invention consists in the retention, in the finished product, of the printers' ink in minute and distributed particles unimpaired by chemical action, coupled with an avoidance of any impairment of the fiber through such action.

3. SAME—IDEA.
   An idea or discovery unaccompanied by any inventive act or practical application of an inventive nature is not within the scope of the patent laws.

4. SAME.
   It is not the purpose of those laws to compel a discontinuance of the lawful manufacture and sale of known products in public use by reason of the mere recognition by some one that they possess merits not theretofore appreciated.

5. SAME—ANTICIPATION.
   The question of anticipation or lack of novelty not being free from doubt, the success with which the complainant's product has met has weight in turning the scale in favor of the invention.

(Syllabus by the Court.)

In Equity.

Arthur v. Briesen, for complainant.
Edwin H. Brown and W. Laird Goldsborough, for defendants.

BRADFORD, District Judge. The bill in this case charges infringement of letters patent of the United States No. 492,927, granted March 7, 1893, to Robert B. McEwan, Jessie L. McEwan and Richard W. McEwan, for an improvement in paper-board, and by them assigned to the complainant, and prays for an injunction and an account. There is but one claim, reading as follows:

"As a new article of manufacture, a paper-board formed from printed newspaper or the like, ground to a pulp and having the permanent particles of the printers', ink minutely subdivided and uniformly distributed throughout the body of the board, whereby a smooth and even tint is imparted to the board."

Infringement is not denied. The defenses relied on are non-invention and lack of novelty. The validity of this patent was affirmed by Judge Townsend in 1894. McEwan Bros. Co. v. White, 63 Fed. 570. It is claimed, however, on the part of the defendants, that the court in that case was clearly in error in its construction of the patent, and, further, that in this case there is abundant evidence of anticipation, prior use and other matter of defense which was lacking in the earlier suit; and that, consequently, this court should not be controlled or affected in the determination of this cause by that decision. The circuit court of appeals for this circuit in National Cash-Register Co. v. American Cash-Register Co., 3 C. C. A. 559, 53 Fed. 367, recognized as a "rule, well established in this circuit," that a circuit court should in deciding a patent case, "follow, unless under extraordinary circumstances, a prior judgment of any other of the circuit courts of the United States, wherever the patent, the question, and the evidence are the same in both suits." In Office Specialty Mfg. Co. v. Winternight & Cornyn Mfg. Co., 67 Fed. 928, the circuit court for the Eastern district of Pennsylvania laid down the rule even more rigidly, saying that, in patent causes, "conclusive effect is accorded by each of the circuit courts of the United States to a prior judgment of any other of them, wherever the patent, the question, and the evidence are the same in both suits, not on the ground of comity alone, but with the practical and salutary object of avoiding repeated litigation and conflicting decrees in the courts of the several districts upon matters which, having been once passed upon by a court of first instance, ought to be referred to a court of appeals for authoritative determination." Whether the circuit court of appeals for this circuit would not hold that a palpable, manifest mistake in the construction of a patent, touching its validity, made in a prior adjudication by a circuit court, would present an exception to the rule under the saving of "extraordinary circumstances" may possibly be a question, which, however, requires no discussion here. For, in my opinion, no such error was committed in White's Case.

The patent in suit is for a product, and not for a process. The evidence shows that paper-board made from newspaper stock or other paper containing printers' ink was no new thing at the date of the alleged invention. For many years prior to that time such paper-board, in which the ink was utilized as coloring matter, was manufactured and sold. It also appears that during the beating process through which such stock went such portion of the printers' ink as was not destroyed or lost was distributed more or less evenly throughout the pulp, imparting a tint to the paper-board. Aside from alleged anticipating products, to which reference is hereinafter made, it was the practice to treat the paper stock, either before or during the process of beating, with bleaching powder or to add to the pulp an alkaline size, or to use both bleaching powder and such

size. This mode of treatment resulted in chemical action by which the fatty or oily ingredient in the ink was saponified, and the fiber of the finished product weakened. The saponified matter was washed out of the pulp and lost.

The description contained in the patent in suit is as follows:

"Our invention relates to the manufacture of paper-board, box-board, and the like from newspapers or other similar printed white paper. Our object is to obtain a quality of board which is superior to the different varieties now on the market, but which can be produced at less cost than any of the said varieties of board of a quality approaching that of ours. In the manufacture of our improved article we preferably use, on account of its cheapness, its freedom from size and its softness, printed newspaper or other printed paper possessing the characteristic properties of the ordinary paper upon which newspapers are printed, and we have found that old copies of newspapers or the overissues can be bought up at low rates and utilized for our purpose. We have found that our improved product can be manufactured most economically and with the best results by following the process which is described below, but it will be understood that the product can be obtained in other ways. In the process referred to we first cleanse the stock from dust and foreign matter and soak it in hot water until it is thoroughly soft. Without permitting it to cool we then transfer it to the beating engine, and when the pulp is sufficiently beaten it is allowed to pass to the stuff chest from which it is pumped to the making cylinder vat, and at all times it is kept as hot as possible under the circumstances. We find that this process is expeditious because when the ink on the paper has once been softened by the hot water it is thereafter kept soft instead of being set again by the use of cold water at any point, and the permanent particles of the ink which are not dissolved and washed away are therefore during the beating more readily subdivided with exceeding minuteness and are thoroughly and uniformly distributed throughout and blended with the fibers. Our novel product, whether made by the process above described, or by any other which may be used in its stead, is a board which has the permanent particles of printers' ink minutely subdivided and uniformly distributed throughout its body to produce a smooth and even tint throughout, while the strength of the fibers has not been impaired by more or less expensive attempts to bleach out the ink. We desire it to be understood that by the term 'newspaper' as used herein, we mean to include paper upon which newspapers, circulars, and the like have been printed and we propose generally to use old copies of newspapers and over-issues for the manufacture of our product. It will also be understood that in practice, if so required for special purposes, we may mix with the newspapers a slight proportion of other paper or of raw fiber."

The complainant does not use in the manufacture of its paper-board either bleaching powder or size. There is no chemical destruction of the printers' ink. There is merely mechanical disintegration. The purpose of the complainant is, not to destroy or to remove, but to retain the ink in the pulp. The paper stock is first cleaned and soaked in hot water until soft, then, without cooling, put into hot water in the beating engine and beaten into pulp, and then run into board. During the process of beating the ink is solely by mechanical action divided into minute particles and thoroughly distributed throughout the pulp. None of the ink is lost save such infinitesimal portion of it as may be carried off in washing. The carbon of the ink gives a tint to the finished product, and the oil or fat of the ink becomes blended with the fibers of the pulp, acting as a cement and increasing the strength of the board. The cost of bleaching and sizing is avoided. The fiber is not weakened through

chemical action. The board is strengthened by containing the oily constituent of the ink. The essence of the alleged invention consists in the retention, in the finished product, of the printers' ink in minute and distributed particles unimpaired by chemical action, coupled with an avoidance of any impairment of the fiber through such action. The utility of the complainant's board is admitted.

It is urged on the part of the defendants that the words "permanent particles of the printers' ink," as used in the claim, do not include its oily constituent, but relate solely to the carbon contained in it. If that were so, the validity of the patent might well be questioned; for admittedly the carbon of the ink was used as coloring matter in paper-boards long prior to the alleged invention. It is further claimed by the defendants that, while the patent in suit excludes the use of bleaching powder, it does not exclude, but on the contrary contemplates the use of an alkaline size. In my opinion, neither of these contentions can be sustained. The claim must be read in the light of the description, and if it be fairly susceptible of two meanings, that construction is to be adopted which will sustain rather than defeat the patent. The supreme court in Rubber Co. v. Goodyear, 9 Wall. 788, said:

"A patent should be construed in a liberal spirit, to sustain the just claims of the inventor. This principle is not to be carried so far as to exclude what is in it, or to interpolate anything which it does not contain. But liberality, rather than strictness, should prevail where the fate of the patent is involved, and the question to be decided is whether the inventor shall hold or lose the fruits of his genius and his labors."

And it has been well said that

"Liberality as often shows itself in a narrow construction as in a broad one; for a narrow construction may be as necessary to establish the novelty of a patent as a broad construction is to lay the foundation for proof of its infringement." Walk. Pat. § 185.

An application of these principles to the specification as a whole leaves little or no doubt that the "permanent particles of the printers' ink" include all the constituents of the ink which remain in the pulp after the paper stock has been subjected to the process particularly described, and not merely the particles of carbon. That process consists of a hot water treatment, and does not suggest the use of an alkaline size or, indeed, any other size. Paper-board manufactured under it contains practically all of the ink in the stock from which it was made. The introduction of an alkaline size would destroy in whole or in part the utility of the finished product by injuriously affecting the fiber, the strength of which it was the purpose of the patentees to maintain unimpaired by chemical action. An assumption that the claim involves or contemplates the use of alkali in the manufacture of paper-board would be repugnant to the fair import of the specification taken as a whole. The alleged invention, in the absence of anticipation or prior use, was, in my opinion, patentable.

There is some evidence tending to show that the complainant's finished product was verbally suggested by others to one or more of the patentees prior to the date of the alleged invention. This evidence, however, is unsatisfactory and inconclusive, and may be

dismissed from further consideration. The most serious question in the case grows out of the voluminous evidence touching the prior state of the art, and alleged prior use and other anticipatory matter. On this question the decision in the White Case is not controlling. The evidence in that case was not substantially the same as it is here; no evidence having been adduced on the part of the defendant, and but one witness having been examined for the complainant. The claim specifies "a paper-board formed from printed newspaper or the like," etc., and when read in the light of the description covers "paper-board, box-board and the like" formed "from newspapers or other similar printed white paper" containing printers' ink. The evidence does not show that prior to the alleged invention any one had conceived the idea that newspaper-board or other similar board containing all the printers' ink uniformly distributed in minute particles would be superior in strength and appearance to newspaper-board or other similar board, containing only the carbon of the ink left after the destruction by chemical action of its fatty or oily constituent. This circumstance, however, does not, considered alone, establish for the complainant either patentable invention or patentable novelty. If the patented board was in fact an old and known product sold in the market prior to the alleged invention, the mere discovery by the patentees that it possessed the inherent virtue of superior strength, not recognized theretofore, did not entitle them to a patent. An idea or discovery unaccompanied by any inventive act or practical application of an inventive nature is not within the scope of the patent laws. And it is not the purpose of those laws to compel a discontinuance of the lawful manufacture and sale of known products in public use, by reason of the mere recognition by some one that they possess merits not theretofore appreciated. The controlling question, under the evidence in this case, is whether before the alleged invention a newspaper-board or other similar board containing all the printers' ink uniformly distributed in minute particles, or any other paper-board containing all the printers' ink so distributed and possessing the essential and distinctive characteristics of the complainant's board as to strength and appearance, made from newspaper or other similar printed paper alone, or from newspaper or other similar printed paper mixed with other paper stock, was manufactured and sold, or known in this country, or described in any printed publication. If it was, the alleged invention was anticipated. If it was not, there must, under the evidence, be a decree for the complainant. The patent in suit is prima facie evidence of its own validity. The burden of proof on the question of a lack of patentable novelty rests upon the defendants. Every fair and reasonable doubt should be resolved against them.

In the case of The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, the court said:

"We have now to deal with certain unpatented devices, claimed to be complete anticipations of this patent, the existence and use of which are proven only by oral testimony. In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not

only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. * * * Indeed, the frequency with which testimony is tortured, or fabricated outright, to build up the defense of a prior use of the thing patented, goes far to justify the popular impression that the inventor may be treated as the lawful prey of the infringer."

Numerous instances of prior use and other anticipatory matter, including divers process patents, are alleged in the answer. On this branch of the case there is a large volume of evidence, and among the exhibits are several specimens of paper-board claimed to anticipate the complainant's product. I shall not undertake in this opinion to go into a discussion of the facts. A careful and painstaking examination of the evidence has left me in grave doubt on the question of anticipation. I am not satisfied that the defendants have shown anticipation. A mere preponderance of evidence cannot, under the settled principles of law, avail the defendants. Nothing less than clear, satisfactory and convincing proof will suffice to negative the presumed novelty of the patented product. The complainant's paper-board is strong, cheap and attractive, and has been received by the public with marked favor and appreciation. It is the best in the market. It is in great demand, and commands a ready sale. It is in general use, and has largely supplanted the inferior product of former years. The question of anticipation or lack of novelty not being free from doubt, the success with which the complainant's product has met has weight in turning the scale in favor of the invention. The complainant is entitled to a decree for an injunction and an account.