## GREENWOOD et al. v. MONARCH MFG. CO. (GARDNER FIBRE CO., Intervener).*

District Court, D. New Jersey. March 29, 1928.

Charles Neave, of New York City, Harrison F. Lyman, of Boston, Mass., Arthur William Nelson, of Chicago, Ill., and Henry R. Ashton, of New York City, for plaintiffs.

Drury W. Cooper and Thomas J. Byrne, both of New York City, for defendants.

BODINE, District Judge. This is an action for the infringement of the Lloyd patent No. 1,243,079. The claims in suit are 1, 5, and 16. They involve the method of manufacturing reed furniture by weaving the fabric separately, and then shaping it to the frames desired to be covered. The reed fabric is woven by running the filler strands in substantially parallel relation to the stake strands. When the fabric is applied to the frame, it is reshaped so as to avoid cutting, or folding or piecing.

The wicker furniture manufacturers realized that the industry had undergone a complete change when the Lloyd method was first shown. The new furniture was far more beautiful and much cheaper to make. The Heywood-Wakefield Company, one of the oldest industries in the country, was forced to merge with the Lloyd Company to save its business.

In the prior art, reed furniture, such as chairs and baby carriages, were hand woven just as the Aztec Indian made his baskets. By the Lloyd method, the fabric is separately woven, and applied to the frame. There is a saving of nine hours of a skilled reed worker's time in the manufacture of an ordinary wicker chair. In the old weaving art, months were consumed in teaching the worker. The worker can now be trained to apply the fabric in two weeks. The saving is enormous. At least, half of the wicker furniture upon the market is now made by the Lloyd process and 99 per cent. of the Heywood-Wakefield baby carriages are so made.

The prior art relied on by the defendant, and at first glance it seems close enough, is the upholstery practice and cane weaving practice, the latter used in car seats. The distinction, however, is this: In the Lloyd method, the fabric is reshaped to the frame. In the upholstery and cane weaving practice, the fabric is cut out or pieced so as to cover the frame. Further, the material is supported by springs or stuffing. If the same methods were used with the pre-woven fabric used by Lloyd, the same results could not be obtained. The gist of the novelty in Lloyd's invention is in reshaping the material upon the frame to be covered so that neither cutting, nor piecing, nor folding the fabric is necessary. Lloyd saved the industry the tedious hand process of making stake and strand furniture by the hand-weaving process. He saw how the fabric could be shaped to produce the same results as were produced by the old and expensive method.

The Ford and Johnson chair No. 3002 is not a stake and strand chair. The fabric, which is of fiber rush, was separately woven and then applied to the frame of the chair. There was no reshaping of this fiber rush. It was simply placed across the chair frame and tacked on. It was woven off the frame. It was impossible to weave it on the frame, because of the way in which the stakes ran. Lloyd limits himself to the fabric having the characteristics of the stake and strand fibric made of reed. The Ford and Johnson people did not use and did not apply to their chair 3002 such fabric. After Ford and Johnson made their 3002 chair, they still went on weaving their stake and strand furniture by the old, laborious method. They did not discover Lloyd's method until Lloyd by his discovery had revolutionized the trade.

The defendant Gardner Fibre Company manufactures stake and strand fabric suitable for the manufacture of wicker furniture under the Lloyd method, and the defendant Monarch Manufacturing Company buys the fabric to use in the manufacture of wicker furniture. Obviously, the Gardner Company knew what the Monarch Company was going to do, and persuaded them to undertake the use of their goods. Both defendants are infringing the patent, one by

weaving the fabric and the other by reshaping the fabric and attaching it to the chair frames.

The following law seems applicable. Mr. Chief Justice Taft, speaking for the Supreme Court in Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 63, 43 S. Ct. 322, 328 (67 L. Ed. 523), said:

"In administering the patent law the court first looks into the art to find what the real merit of the alleged discovery or invention is and whether it has advanced the art substantially. If it has done so, then the court is liberal in its construction of the patent to secure to the inventor the reward he deserves. If what he has done works only a slight step forward and that which he says is a discovery is on the border line between mere mechanical change and real invention, then his patent, if sustained, will be given a narrow scope and infringement will be found only in approximate copies of the new device. * * * In the case before us, for the reasons we have already reviewed, we think that Eibel made a very useful discovery which has substantially advanced the art. * * *

"The fact that in a decade of an eager quest for higher speeds this important chain of circumstances had escaped observation, the fact that no one had applied a remedy for the consequent trouble until Eibel, and the final fact that, when he made known his discovery, all adopted his remedy, leave no doubt in our minds that what he saw and did was not obvious, and did involve discovery and invention."

A decree may be entered accordingly.