## SMITH ENGINEERING WORKS v. NORDBERG MFG. CO.

No. 4964.

Circuit Court of Appeals, Seventh Circuit.

Jan. 9, 1934.

Arthur L. Morsell, Curtis B. Morsell, William H. Lieber, and Arthur L. Morsell, Jr., all of Milwaukee, Wis., for appellant.

Edwin S. Mack and Leon F. Foley, both of Milwaukee, Wis., and Donald M. Carter and Norman S. Parker, both of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

EVANS, Circuit Judge.

█ The two patents, the validity and infringement of which are challenged on this appeal, deal with a "gyratory cone crusher" and a "process of crushing hard materials." Both the machine and the process patent were issued on the same day to the same party, Edgar B. Symons. Claim 2 of the product patent and claim 8 of the process patent, both typical, are set forth in the margin.[1]

Crushers of the type described in the patent are used to crush ore, rock, etc. Their construction calls for a gyratory cone and another element consisting of a concave bowl within which the cone is located. The rock or other substance is put into the top of the crusher, and the movement of the cone causes the material to find its way into the space between the cone and the concave member. The amount of material to be crushed is controlled by the opening which is restricted. The asserted novelty of the Symons crusher is to be found in the "crushing space between said cone and concave having a cross section materially greater than that of the stream of the material passing therethrough, and means for withdrawing the cone from the concave after each crushing impact, at such speed, and through an excursion of such length, as to leave the material unsupported, after the crushing impact, and to cause it to drop freely by gravity away from the concave and upon a lower portion of the cone."

The appellee's position is that prior to its invention all crusher machines were so constructed and so operated as to keep the space

[1] Claim 2 (No. 1,537,564). "In a gyratory crusher, a crushing cone having a higher angle than the angle of repose of the material delivered thereto, a downwardly and outwardly inclined concave overhanging said cone, the crushing space between said cone and concave having a cross section materially greater than that of the stream of material passing therethrough, and means for withdrawing the cone from the concave after each crushing impact, at such speed, and through an excursion of such length, as to leave the material unsupported, after the crushing impact, and to cause it to drop freely by gravity away from the concave and upon a lower portion of the cone."

Claim 8 (No. 1,537,565). "The process of crushing material, which consists in feeding it by gravity between a pair of opposed crushing elements, and causing all particles of the material to fall by gravity therebetween, in interrupting the flow of the material between such elements by a succession of crushing impacts, in causing the material to drop freely under gravity, and scattering it across the surface of one of said elements after such crushing impacts, and conveying it laterally, while it is being scattered, in an excursion terminating in the succeeding crushing impact."

between the cone and the concave member filled full of the material to be crushed. Symons' machine and process provided for a space which is never completely filled with material. As the space is not filled with material, the cone is free to move with the result that the material is cracked, and as the cone withdraws, this material falls to a lower point on the cone where cracking of smaller lumps immediately occurs.

This operation of the machine—of the cone pinching the lump of ore when swinging and revolving—continues until the material is entirely crushed. The process is described by the inventor as follows:

" * * * This alternate lateral conveying, crushing, vertical drop and lateral conveying continues until the particles being crushed have escaped from the crushing zone and pass downwardly across the lower edge of the cone."

The evidence of extensive use of the new machine and the data on the increased output of crushed material are impressive.

The moving picture demonstration made in open court for our enlightenment was also persuasive of the asserted advantages of this machine over the prior art. Further elaboration of the description and workings of the machine are unnecessary.

We unhesitatingly agree with the District Court in its conclusion on both the issue of validity and infringement. The machine was useful, it secured better results than the old crushers, and some of the elements in the combination were new and were so arranged as to secure better results. The advance over the prior art spelled invention.

█ Respecting the process patent we have a very different question and one not entirely free from doubt. This patent was issued simultaneously with the product patent. It describes the action and the results of the action of the machine covered by the patent. There is an effort to get away from the effect of a series of operations which consist of mechanical transactions and which are but the peculiar function of the machine which was constructed to perform them. Whether the claims in suit are thus limited to the functions of the machine or whether they are mechanical transactions which may be performed by hand or by several different mechanisms is the question we must determine, for on its determination patentability turns.

A process or art, as that word is used in the patent law, is an act or series of acts

performed upon the subject matter to be transformed. Each act is ordinarily called a step. It is difficult to conceive of an accurate description of an act without the use of a verb. An inventor speaking to the world is required to describe (and to do so clearly) each step of his invention so that infringement may be avoided. Although numerous claims may be granted in a single patent, each claim is separate and distinct from the other and each represents a grant of a monopoly. Each claim must therefore disclose a series of steps, that is to say, an act or series of acts performed upon the subject matter to be transformed. The patentability of such a series of acts depends upon the novelty of one or more of the steps or the order of said steps and the inventiveness of such novelty. A process may be altogether new, whether the machine by which it is carried on is new or old. A new process may be invented or discovered which may require the use of newly invented machinery. In such a case, if both the process and machine are invented by the same person, he may obtain separate patents on the machine and the process. Likewise, a new process may be carried out by using the old machine in a mode in which it was never used before. In either case the patentability of the process is in no degree dependent upon the characteristic principle of the machine although the machine is essential to the process and although a particular machine may be required. Expanded Metal Co. v. Bradford, 214 U. S. 366, 383, 29 S. Ct. 652, 53 L. Ed. 1034.

On the other hand, the mere function or effect of the operation of the machine cannot be the subject of a lawful process patent. The steps of a process claim may be performed by a machine as well as by hand. The validity of the claim, novelty and ingenuity appearing, however, does not depend upon the instrumentality by which the described act is performed. But the claim must contain an intelligent description of the act which constitutes the step. If all of the acts are merely the results following the operation of a machine and are necessarily restricted to the specific machine covered by a patent, the validity of such process claims can not be upheld. In other words, the monopoly represented by the machine patent measures the extent of the statutory monopoly lawfully obtainable.

Referring to claim 8 attention is specifically called to the language "and causing all particles of the material to fall by gravity therebetween." To what does the word "causing" refer?

Like uncertainty attends the next clause "in interrupting the flow of the material between such elements by a succession of crushing impacts." This language describes the result of impacts rather than the action which is the legitimate and essential part of the step. Note the following: "in causing the material to drop freely under gravity." Who causes it? To what word does "cause" refer? Does this language describe the next step in the process? If so, is it not the description of the action of the machine? In other words, is not the inventor here merely describing the function of a machine? Then, again, note the words "excursion terminating in the succeeding crushing impact," which refer to the action of the cone in the machine as it approaches the concave member.

Our conclusion is that the two process claims must be declared invalid because (a) the so-called steps are not defined with sufficient particularity to inform the public so as to enable it to avoid infringement; (b) the language does not describe acts which are the life of steps in a process patent; and (c) because such language describes the functions of the machine which was covered by the machine patent issued on the same day.

The decree is modified by eliminating therefrom that portion which held valid and infringed claims 6 and 8 of patent No. 1,537,565 and, as modified, is affirmed.

The costs of this appeal shall be borne equally by both parties.