## BLACK–CLAWSON CO. v. CENTRIFUGAL ENGINEERING & PATENTS CORPORATION.

### No. 7207.

Circuit Court of Appeals, Sixth Circuit.
April 7, 1936.

In the paper making art, whether the stock is woodpulp, rags, or other fibrous material, it is desirable to remove impurities such as sand, grit, or metallic substances, and the higher the quality of the paper to be produced the greater the importance of complete elimination of impurities. This is particularly true in the manufacture of fine bond or writing papers, and in the manufacture of paper used in the electrical arts, where the presence of even minute metallic substances impairs its insulating character. The conventional method of removing impurities was by running the paper stock through a sand trap or grit retainer, the pulp having to flow over successive bars in a trough whereby the heavier impurities were separated from the stock by the force of gravity. Lighter impurities, such as knots, or improperly divided fibre, were removed by a strainer in the form of a fine meshed sieve.

Drury W. Cooper, of New York City (Marechal & Noe and Greer Marechal, all of Dayton, Ohio, and J. B. Hayward, of New York City, on the brief), for appellant.

Harrison F. Lyman, of Boston, Mass. (H. L. Kirkpatrick and Fish, Richardson & Neave, all of Boston, Mass., and Allen & Allen, of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

In a patent suit involving claims for a process for purifying paper pulp, the defense of noninfringement having been waived, or the fact of infringement conceded, validity was alone in issue. The patent is one to Thomassen, No. 1,536,988, granted May 5, 1925, upon an application filed February 16, 1924, and belongs to the appellee, plaintiff below. Overruling defenses based on anticipation, double use, and the functional character of the claims, the District Court held the patent valid, and from the decree granting injunction and awarding damages the defendant appeals.

Thomassen, a Dutch inventor, perceived the imperfections of the sand trap, in that it permitted many of the heavy impurities to pass because of the clogging of the material at the retarding bars, where it freed itself in comparatively large masses. He approached the problem from a different angle, and sought to substitute for the sand trap a device by which the heavier particles would be thrown from the paper pulp by centrifugal force without at the same time removing the fibres which themselves possess a higher specific gravity than the water in which they are suspended, and with provision for the removal of lighter impurities before the stock was permitted to continue its flow.

Thomassen's apparatus and process were in commercial use abroad when they were brought to the attention of manufacturers of paper and paper making machinery in the United States. The result was the importation of the apparatus and the application for and grant of the United States patent here in suit. Thomassen was allowed three claims, the first two for a process, and the third for an apparatus. The process claims are alone in suit, and are printed in the margin.[1] The

1. In a process for removing impurities from paper pulp or other fibrous material, continuously supplying the pulp to a centrifugal separator, rotating the separator at a speed sufficient to accumulate the pulp in a substantially cylindrical layer, collecting heavier impurities at the outside of the layer, collecting the lighter impurities at the inner surface of said layer and discharging the purified pulp from between the said impurities.

2. In a process for removing impurities and knots or the like from paper pulp and other fibrous material, supplying the

explanation given by the plaintiff for not suing upon the apparatus claim is that the infringer omitted from its machine the vanes in the drum for rotating the pulp which constituted one of its elements.

Centrifugal separators were old in the arts. They are described in many patents as designed to separate heavy and light impurities from a variety of materials other than paper pulp. Typical of these patents is Sanford 1,161,981, granted November 30, 1915. The Sanford structure in its elements, organization and manner of use, bears great similitude to the apparatus disclosed by Thomassen, and this gives rise to the contention that Thomassen's claims are invalid because merely disclosing a new use for a well-known apparatus, and that they must fail under the authority of the double use cases, which we do not pause to cite. The plaintiff's response is that Sanford and kindred disclosures do not suggest a process which accomplishes the elimination of impurities from a body of fibrous material and water while discharging together materials having different specific gravity, to wit, the fibres and the water in which they are suspended. None of the prior patents, it is urged, discloses an apparatus or suggests a method of purifying paper stock while leaving therein materials of different specific gravity, for the art represented by Sanford concerned itself only with removing all solids from liquids, or the separation of heavier from lighter liquids. We are not concerned, however, with a question of analogous use, for the gap between the paper and other arts has been bridged, and the record discloses three patents: The British patent to Kellner, No. 4960 of 1890; the Juel British patent, No. 2349 of 1891; and United States patent No. 813,984 to MacNaughton, 1906—each for a centrifugal separator for taking impurities out of paper pulp. It is somewhat significant that none of these patents was cited against Thomassen, and that he did not include them in the art which he proposed to advance. His description was limited to a recital of the

advantages to be gained over the conventional sand trap.

The plaintiff's answer to these references is that neither Kellner nor Juel proposed a segregation of the heavier impurities from the pulp, but the mere concentration of them in the outer portion of the moving stream whereby they were carried off along with a continuous discharge of good pulp, so that both Kellner and Juel were wasteful and impractical, and never made any impression upon the paper making art. MacNaughton is distinguished from Thomassen as describing an apparatus which utilizes the force of gravity to clear the stock from impurities, and contains no suggestion of the method disclosed and invented by Thomassen. This leads to a consideration of what is asserted as the peculiar contribution of Thomassen to the art. The stock to be purified consists not of a homogeneous liquid, but a mixture of water and fibres. The problem presented is the removal of both heavy and light impurities without removing the fibres. Thomassen substituted for gravity as the separating means of the prior art a powerful centrifugal force that causes the stock in the cylinder to rise vertically and assume the form of a substantially cylindrical vertical wall. It would be supposed that the degree of centrifugal force used in the Thomassen process would throw out the fibres as well as the heavy impurities from the stock. In fact this is precisely what happens in the beginning, for the first result of the exposure of the pulp to the degree of centrifugal force taught by the patent is the formation of a mat at the periphery of the cylinder, its thickness determined by the cylinder's inturned upper rim. Once the mat has been formed no more good fibres are thrown out from the mixture. These now pass from the machine with the water in which they are suspended. Only the impurities are cast out, the heavier impurities being thrown to the outside of the moving layer of pulp and lodged in the mat, while the lighter impurities pass upwardly and are detained and collected by a skimming ring. When the

pulp continuously to a centrifugal separator, rotating the separator at a speed sufficient to cause the pulp to accumulate in a cylindrical layer and to cause the knots or the like and the heavy impurities to accumulate at the outer surface of the layer, retaining the said knots and impurities in the separator, retaining the lighter impurities at the internal surface of the layer of pulp, and discharging from the outer and inner surfaces of the said layer purified pulp free from impurities and knots or the like.

mat has become so coated on its surface that it no longer furnishes lodgment for impurities the machine must be shut down and cleansed.

It is conceded that the phenomenon that occurs in the formation of the mat is not apparent, but the speculation is advanced that probably during the first minute or two of operation the pulp remains in the machine for a relatively long period, since before any can pass out the periphery of the drum must be filled with pulp to the level of the inturned upper edge of the drum, which takes some appreciable time, whereas after the mat has been formed and fills up this space the pulp passes through the machine in a thinner and more rapidly moving stream, and any given unit of pulp stays in the machine for a shorter period. So it may be the explanation for the anomalous action that whereas in the initial stage there is time enough for centrifugal force to act to separate out the fibres from the water thereafter the pulp remains in the machine too short a time for this to happen. In any event the formation of the mat automatically develops such conditions as to flow of stock as are required in order to prevent further loss from the water of good fibres while allowing the impurities to be thrown out and lodged in the mat. The mat having once been formed operates to purify the pulp of both heavy and light impurities without further loss of good fibre.

It is the building up by appropriate speed of rotation of the substantially cylindrical vertical wall of paper stock with the consequent formation of the fibrous mat that furnishes the vitalizing step of the Thomassen method. But the defendant's response is that this cylindrical wall of pulp is but the inevitable result of the operation of the Thomassen machine. It is therefore urged that no patentable method is disclosed since it cannot be performed either by hand or by any other known apparatus, and that the claims are so broad as to exclude all other inventors who might accomplish the same result by means or methods unknown to Thomassen, and this leads us to what we consider the controlling point in the case—a determination as to whether or not the claims are functional.

■ It is now well settled that operations which consist entirely of mechanical transactions, and which are only the peculiar functions of the respective machines which are constructed to perform them, do not constitute processes which are patentable in the United States. Corning v. Burden, 15 How. 252, 267, 14 L.Ed. 683; Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 425, 22 S.Ct. 698, 46 L.Ed. 968; Risdon Locomotive Works v. Medart, 158 U.S. 68, 15 S.Ct. 745, 39 L.Ed. 899; Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 257, 48 S.Ct. 474, 72 L.Ed. 868; Heidbrink v. McKesson, 290 F. 665 (C.C.A.6); Walker, Patents (6th Ed.) 25. Though formerly debatable, it is also now settled that operations which consist entirely of mechanical transactions, but which may be performed by hand or by any of several different mechanisms or machines, are patentable as processes or arts. Expanded Metal Co. v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034; Walker, supra. The principle governing determination of whether claims are functional has been thus expressed by this court: "No doubt it is competent, when the circumstances permit it, for an inventor in describing a machine or apparatus which he has devised, to make a claim for a process which his patented device is capable of carrying out. But to entitle him to do this the process must be one capable of being carried out by other means than by the operation of his patented machine, and, unless such other means are known or within the reach of ordinary skill and judgment, the patentee is bound to point them out; for, unless the public are informed by what other means the process can be carried on, the process is to them nothing else than the operation of the machine—in other words, the exercise of its functions." American Lava Co. v. Steward (C.C.A.) 155 F. 731, 738. More concise is the statement, "But a patent may not issue to cover a process which involves nothing more than the operation of a piece of mechanism." Chisholm-Ryder Co. v. Buck, 65 F.(2d) 735, 736 (C.C.A.4). There the evidence failed to indicate how the process might be carried out practicably in any independent fashion, and the process patent, merely stating the function or effect of the machine, was held invalid under the established rules.

■ It is not suggested that the Thomassen method may be performed by hand, but a complete answer to the contention that the claims are functional is asserted to lie in the fact that the patented method is being carried out by other machines

than the one shown in the patent, notably the machines made by the licensees operating under the patent—the Bird "centrifiner" and the Tolhurst machine, as well as the defendant's machine, which are said to differ from the machine shown in the patent as well as from one another. But all of these machines are centrifugal separators. It certainly cannot be the rule that claims escape the condemnation that they are functional by the mere reorganization of the patented machine, when the principle of operation remains identical. Cf. Smith Engineering Works v. Nordberg Mfg. Co., 68 F.(2d) 492 (C.C. A.7). And a process which cannot be described otherwise than by describing the characteristic function of a machine is not validated by showing it may be carried on by another machine which has the same characteristic function in respect to the precise result to be attained. To say that the effect produced by one centrifuge is not functional because the same effect may be produced by another centrifuge is to beg the question. We think the claims here involved are clearly functional. They differ in no material respect from those considered in Heidbrink v. McKesson, supra, and yield to the same destructive analysis as those invalidated in Smith Engineering Works v. Nordberg Mfg. Co., supra.

Nor is it in our judgment any answer to the functional challenge to say that there is nothing inherent in the nature of a centrifugal machine which requires that it be operated at a speed sufficient to accumulate the pulp in a substantially cylindrical layer. One might make a similar observation in respect to any machine. A machine is designed to accomplish a certain result when operated at a certain speed. To describe a process in terms that tell what happens when the speed is attained, or conversely to determine appropriate speed by a certain result when reached, is to describe the operation of the machine. The claims here are clearly drafted to cover any means or method which any one may ever discover for producing the same result.

We have not overlooked the substantial evidence pointing to commercial acceptance of the Thomassen method or apparatus, but if all of the acts constituting the process are as we think they are, merely the results following the operation of a machine, and are necessarily restricted to machines identical with or employing the characteristic principle of the patented machine, the validity of the process claims cannot be upheld. The monopoly represented by the apparatus claim measures the extent lawfully obtainable. Smith Engineering Works v. Nordberg, supra.

Decree reversed, and the cause remanded to the District Court, with instructions to dismiss the bill.