## WADDELL et al. v. EASTMAN KODAK CO.

### No. 436.

Circuit Court of Appeals, Second Circuit.

July 12, 1937.

W. Brown Morton and H. Stanley Mansfield, both of New York City, for defendant-appellant.

Charles B. Bechtold, of Rochester, N. Y., and Joseph G. Denny, Jr., of Philadelphia, Pa., for plaintiffs-appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

This suit for patent infringement of the Hill patent, No. 1,513,172, granted October 28, 1924, on an application filed January 6, 1923, for an apparatus and process for removing non-condensible gases from refrigerating systems, resulted in a decree holding the patent valid and infringed. Claim 1, 'for an apparatus, describes "a separator for removing from a refrigeration system the non-condensible gases," and claim 6 contains "a method for removing from a refrigeration system the non-condensible gases."

The charge of infringement is the installation and use of a purger in appellant's refrigeration systems, whose purpose is to condense out of the air the ammonia vapor which is admixed with it to thereby salvage the ammonia. By discharging the accumulated air through a condenser, the ammonia vapor is recovered.

Refrigeration is produced by permitting a volatile refrigerant, as ammonia, to change from the liquid to the gaseous state. By this process of evaporation or vaporization, heat is absorbed from the surrounding media. It is essential to a mechanical refrigerating system that the gas produced when the liquid refrigerant evaporates be reconverted to its liquid state so that the supply of liquid refrigerant for evaporation may be constantly replenished. Refrigerants exist in a liquid or vapor state depending upon the pressure or temperature conditions to which they are subjected. At low pressure they evaporate from the liquid to the vapor state and absorb heat from the surrounding media and they liquefy or condense when they are subjected to high pressure and heat is extracted from them. Gas produced by evaporation of the liquid refrigerant is reconverted to liquid form by first compressing it to raise the pressure thereof and then cooling it in the condenser to withdraw heat therefrom. The heat absorbed during evaporation to effect refrigeration is extracted by the cooling medium used in the condenser.

There are two types of mechanical refrigerating systems, differing only in the means employed to compress the refrigerant gas after it has evaporated and produced the refrigerating effect and before it is cooled and condensed back to the liquid state. In one, the compression system, the evaporated gas is compressed by an ordinary pump compresser; in the other, the absorption system, the evaporated gas is condensed to liquid form and dissolved in water forming an ammonia solution called aqua ammonia, and this solution is then heated whereby the ammonia gas is boiled off from it at a high pressure. The step of condensing and dissolving the ammonia gas in water is called "absorption." Aside from the means employed to compress the evaporated ammonia gas, the absorption and compression systems are essentially identical. The compressed gas is in each case passed through the condensers where it is cooled and so converted into liquid ammonia which collects in tanks called receivers. The condensers used in both systems may be of the surface type in which the ammonia gas is cooled by direct contact with the surfaces of cooled pipes or walls or they may be of the flooded type in which the ammonia gas is bubbled upwardly through a column or body of liquid ammonia which in turn is cooled by contact with cooled surfaces, such as water tubes. The surface condenser is the older of the two types, although both were used prior to the date of the Hill patent application. By draining the liquid ammonia from a flooded condenser, it is converted to a surface condenser.

The accumulation of non-condensible air or gas in both types of refrigerating systems lowers their operating efficiency. The process by which this air or gas is eliminated is called purging and purging had been practiced long before the Hill patent. The problem of purging is essentially the same in the compression and absorption type systems. It is carried out by letting the air or other non-condensible gas blow out of the system at an appropriate point. In some plants this is done by releasing a mixture of air and ammonia from a valve at the top of the condenser and leading the mixture through a rubber hose into a water barrel where the ammonia gas in the mixture is condensed and dissolved while the air bubbles through the water and escapes. But in this method of purging some of the ammonia escaped from the system with the purged air. This loss is largely overcome by more modern purgers. These are condensers and comprise tanks and chambers into which the mixture of gaseous ammonia and air is purged from the system and within which the mixture is so cooled that a substantial portion of the ammonia is condensed and liquefied and so salvaged while the air is permitted to escape.

The work of purgers had been known since 1877 (Holden patent). They had been used to condense and return ammonia from the mixture of ammonia and air purged from refrigerating systems. The purger of the patent in suit differs from the Holden purger only in that the patentee employs a flooded condenser instead of a surface condenser for condensing the ammonia vapor out of the air to be discharged from the system. Instead of directing the vapors to be condensed directly against the condensing surface, as Holden did, this patentee arranges a float valve

for controlling the discharge outlet so as to maintain a body of condensate in the shell of the purger and the vapors are condensed below the surface of this liquid condensate. The condensed ammonia discharged continuously back into the system in the earlier patent and in the one in suit through the float valve connection, while a valved discharge pipe permits the discharge of the accumulated non-condensible gases to the atmosphere.

There is no structural novelty in the patent in suit. It is an ordinary flood condenser widely used in refrigerating apparatus long prior to the patentee's time. Appellant used purger No. 1 in its absorption system from 1912 to 1924. In the latter year it installed a compression type refrigerating system and used purger No. 2 on which the charge of infringement is based. The court below found that structurally purgers Nos. 1, 2, and 3 (Hill purger) were identical. Findings were made that though the claims do not limit appellee's patent to a compression system, nevertheless the apparatus and method used are constituted only for such a system; that though purgers for removing non-condensible gases are to be found in the prior art, the patent in suit was the first to describe a method which avoided the necessity for interruption and which affected the removal without waste of the refrigerating medium, ammonia gas.

■ The decree below is based upon a finding that the patent in suit was functionally different from the prior art and involved invention. But refrigerating processes which involve the removal of non-condensible gases and the salvage of the refrigerant were old in the art. While it is true that in some instances interruption of the refrigerating process was required, in the Lanphier and Hirth patents of the prior art a process is described in which interruption was unnecessary. There is nothing in the claims which requires the restriction to compression type as the court below found and it is familiar law that from the claims the invention is determined. Fulton Co. v. Powers Co., 263 F. 578, 580 (C.C.A.2). But even thus restricting the patent, the difference between the compression and absorption systems is not sufficient to constitute invention. While it is true that in the absorption system the purger recovers the ammonia as aqua ammonia whereas in the compression system it is re-

covered as anhydrous ammonia, the methods and purposes accomplished in each system are substantially identical and the purgers or separators which are used are condensers which are found in the prior art.

■ Claim 1 recites the succession of structural elements for accomplishing stated functions, and claim 6 recites the performance of the stated functions themselves. Structurally appellant's No. 1 purger, whose operation continued for ten years prior to the filing date of the Hill patent is essentially identical to that of the patent in suit and hence anticipates claim 1. The anticipatory effect is not avoided by the supposed limitation of claim 1 to the compression type of refrigerating system. The patent thus limited defines nothing patentable over the No. 1 purger since there is nothing inventive in the use of an old apparatus for an analogous purpose. E. Fredericks, Inc., v. Eugene, Ltd., 3 F.(2d) 543, 545, 546 (C.C.A.2).

■ Moreover, the Shipley patents, Nos. 1,079,610 and 1,087,052, disclose flooded refrigerant condensers and were known as early as 1913. The gases pass upwardly through a liquefied column of ammonia; the ammonia is condensed and the non-condensible gases pass off from above the liquid column through a purge valve; the liquefied ammonia in the shell is cooled by the water flowing in the tubes and so kept at a temperature below its ebullition point at the pressure prevailing in the shell. There is no distinction to be found either in structure or function between the device of the patent in suit and Shipley's condenser. The use of a flooded condenser to condense ammonia gas and to discharge non-condensible gases when acting as a purger is wholly analogous to the performance of the same function by the same condenser in a refrigerating system as Shipley shows. The results obtained, condensation of ammonia in liquid form and removal from the system of non-condensible gases, are identical.

Claim 6 purports to cover a method, but it is apparent that it recites only the necessary and obvious functions or operations of the apparatus set forth in claim 1. There is nothing in Hill's apparatus which constitutes an advance in the art amounting to invention.

Decree reversed.