**COMOLITE CORPORATION v. DAVIDO-VICZ et al.**

**No. 284.**

Circuit Court of Appeals, Second Circuit.

April 15, 1940.

---

[3] See Inter Vivos Transfers and the Federal Estate Tax, 49 Yale L.J. 1118.

111 F.2d—8½

122

Brown & Jones, of New York City (Donald L. Brown, of New York City, of counsel), for plaintiff-appellee.

Bobick & Warshawsky, of New York City (Richard Eyre, of New York City, of counsel), for defendants-appellants.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

This is the usual action in equity for an injunction and an accounting because of the alleged infringement of all three claims of U. S. Patent No. 1,508,504, issued to James de Selding Brown on Sept. 16, 1924 on his application filed July 29, 1922, for a heel for boots and shoes. It is now owned by the plaintiff. All the claims were held valid and infringed and defendants appealed.

As Brown said in his specifications, "The invention relates to heels of composition or wood type, and the object of the invention is to provide an economically manufactured heel which shall be light, strong and tough and impervious to water, and which, with a top-lift therefor, is adapted to receive and hold a surface coating which shall be hard and wear-resisting and impart the desired color and finish." He also said, "The preferred heel block is formed by mixing hardwood sawdust with glue size or like pasty cement or (sic) sufficient tenacity to permit the plastic mass to be shaped in a suitable mold under pressure and to maintain its shape without checks or pits when removed therefrom".

And then he disclosed the vital part of his claimed invention which was carried expressly into two of his claims and certainly must be treated as a part of the remaining claim which is as always to be read in the light of the disclosure which supports it. This was the saturation of his heel with nitrocellulose after it had been pressed into form. In this respect he states in his specifications when speaking of the pressed heel that, "When the block thus formed is dry it is soaked in nitrocellulose in solution which penetrates the pores and interstices and when the solvent of the nitrocellulose has evaporated the block is found to be strong and tough, well adapted to receive and hold the nails of the heelseat, and practically homogeneous throughout and waterproof". This is a clear statement to the effect that the heel block is soaked in the nitrocellulose solution until that solution has gone into it to such an extent that the block is practically homogeneous throughout. That can only mean that to be saturated with nitrocellulose within the terms of the patent there must be more than surface coating. There must be such substantial penetration of the interior of the block that the final composition of it is practically the same there as that just beneath the surface coating. If this were not made abundantly plain by the language already quoted it would become so when that language is read in connection with what immediately follows: "Any slight surface roughness may be smoothed by sandpapering and the block is then ready to receive its coating which is applied by dipping in nitrocellulose and drying". When the patentee was speaking about the composition proper of the heel block he used the words "soaked in nitrocellulose in solution which penetrates" the block to make it "practically homogeneous throughout". When he was speaking about giving the surface finish to the heel block he used the words "by dipping in nitrocellulose and drying". That he used the different words to describe different steps in the manufacture of his heel is obvious. He meant to put a dipped finish of nitrocellulose upon a heel block already soaked in a solution of nitrocellulose until it was practically homogeneous throughout. And that is what he claimed.

Claim 2 may be taken for present purposes as typical. It reads: "2. As an im-

**123**

proved article of manufacture, a heel comprising a molded block composed of sawdust and a soluble binder, and saturated with nitrocellulose, and a finishing coating thereon."

■ The claimed feature of nitrocellulose saturation not only conforms to the disclosure but is of great importance in distinguishing from the prior art as exemplified by what may be called the Hanna Patent No. 1,429,586 granted Sept. 19, 1922, on an application filed Oct. 2, 1920, for a molding mixture[1]. The disclosure was for a mixture consisting of sawdust or other filler, glue or other binder, and formaldehyde and while not stated to be for a heel there is no reason apparent why it could not be molded in the shape of a heel if desired.

The defendants manufacture heels of the sawdust-glue composition of the prior art and can infringe only by their use of a nitrocellulose solution in the process. What they do in manufacturing their composition heels is adequately shown by a stipulation filed by the parties and now quoted in part: "Dry glue is dissolved in water and heated; to the dissolved glue, formaldehyde and cresylic acid are added; then a filler such as terra alba is added; then sawdust is added and the entire mix stirred for two or three minutes; then the mixture is put into a machine which dries it to some extent and breaks it into small particles so that it is easier to hold; the mix is then molded and the molded heels are placed in a drier and dried with live steam." And further, "The molded sawdust heels * * * are processed after they are molded. They are first sanded. They are then dipped into a lacquer known as a 'prime coating' and immersed therein a few seconds. This lacquer comprises film scrap, a solvent therefor, and a dispersion therein of a fine clay as a filler. The film scrap contains nitrocellulose and no other cellulosic material. After the heels are dipped in this lacquer they are buffed or polished and then sprayed with a clear lacquer to which a pigment or other coloring agent is usually added." This last, or finishing, spray had been used in finishing wooden heels for about twenty years.

When the cause was tried, counsel for the appellants did not actively contest infringement provided the claims were valid but after the court had held the claims valid and infringed, substituted counsel moved for a reargument to present more fully the question of non-infringement. That motion was denied.

The issue of non-infringement was raised by the pleadings and was not abandoned, although not seriously pressed, during the trial. It was, however, urged upon the court as above stated and was dealt with on the merits in an opinion filed when the petition for reargument was denied. The judge, being of the opinion that the dipping of the defendants' molded heels in nitrocellulose and the immersion therein for a few seconds was the equivalent of what was done to the heel blocks of the patent to make them "saturated with nitrocellulose" as claimed, denied the motion.

■ Great weight is to be given the opinion of the experienced judge who tried this case below but we cannot agree with him that infringement was shown. The burden to do that was on the libellant. Its proof showed that the patentee disclosed and claimed nitrocellulose saturation as above while the defendants merely coated by dipping for a few seconds as stipulated. It was shown neither that such a dipping could saturate the heel with nitrocellulose to the extent that its composition became practically homogeneous throughout nor that such a condition was present in the defendants' heels. That left the proof short on a vital issue and left the plaintiff without right to a decree in this suit even if its patent is valid; an issue now left undecided.

Decree reversed and bill dismissed.

[1] Though this patent may not be treated broadly as prior art since it was not granted before the application for the patent in suit was filed, it does serve to show what Brown did not invent first. Stelos Co. v. Hosiery Motor-Mend Corporation, 2 Cir., 72 F.2d 405.